**In the Interest of C.S., a Child.**

**No. 10–07–00276–CV.**

Court of Appeals of Texas, Waco.

July 30, 2008.

John C. Stevenson, Dallas, for Appellant.

P. James Rainey, Rainey & Rainey LLP, Waco, for Appellees.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

Appellant filed a motion to modify an order naming Appellees as managing conservators of his daughter. Appellees are the child's maternal great-uncle and great-aunt. The trial court granted Appellees' motion requesting dismissal for non-compliance with the affidavit requirement of section 156.102 of the Family Code. Appellant contends in five[1] issues that the court's ruling is erroneous because: (1) Appellees lack standing; (2) he did not receive adequate notice of the hearing on the dismissal motion; (3) he presented more than a scintilla of evidence to satisfy the requirements of section 156.102; (4) Appellees did not specially except to the adequacy of his motion to modify; and (5) the court improperly dismissed his suit "with prejudice." We will modify the judgment and affirm it as modified.

### Background

The Department of Family and Protective Services placed C.S. with Appellees[2] in October 2005 when it filed suit for termination of the parental rights of Appellant[3] and C.S.'s mother because of alleged child abuse. The Department conducted a home study of Appellees' home and found it to be an appropriate placement for C.S. The court approved the placement with Appellees as relative caregivers. The court set the matter for final hearing in October 2006. The parties reached a mediated settlement agreement under which James, Appellees, and the child's mother would all be designated as joint managing

---

1. Although Appellant's brief includes only four issues in the statement of issues presented, we construe his "fourth issue" to include two distinct sub-issues.

2. To protect the identity of the child who is the subject of this suit, we shall refer hereinaf-ter to Appellees individually by the pseudo-nyms "David" and "Rebecca" or collectively as Appellees. *See* TEX. FAM.CODE ANN. § 109.002(d) (Vernon 2002).

3. We refer hereinafter to Appellant by the pseudonym "James." *Id.*

conservators, but Appellees would retain the exclusive right to designate the child's primary residence.

However, the court did not strictly follow this agreement. Instead, the court appointed Appellees as non-parent joint managing conservators and appointed James and the child's mother as possessory conservators. The court did follow the parties' agreement with regard to terms for possession of the child. The "agreed order" provided for visitation by agreement and, in the absence of agreement, provided for "graduated and stair-stepped visitation in four phases with each phase conditioned upon completion by [James] prior to beginning the next phase."

The child's mother filed an affidavit relinquishing her parental rights about four months later. James filed a motion to modify seven months after the court signed the "agreed order." Among other things, James stated in the motion to modify that he was withdrawing from the mediated settlement agreement because the court's order did not conform with the agreement that he be named a joint managing conservator. James contended in an amended motion that modification would be in the child's best interest because the order does not conform with the settlement agreement and "is *not* workable to promote a proper family relationship with Movant" because the order did not conform to the settlement agreement. In addition, James alleged that Appellees: (1) refused to give documentation of medical expenses, (2) refused to revise visitation days so he could take a better paying job, and (3) made disparaging remarks about him in front of the child, "the contents of which statements potentially constitute emotional abuse of the child by promoting parental alienation." He further alleged that Appellees "do not have standing to possess the child" because they are not related to the child within the third degree of consanguinity. James supported his motion with affidavits signed by himself, and by the child's godfather and godmother.

Appellees filed a "Motion to Determine Sufficiency of Affidavits Pursuant to Texas Family Code § 156.102" on August 6, 2007. James filed an "Objection" to this motion arguing that Appellees' challenge to the adequacy of the affidavits and request for a denial of the relief sought "makes [their motion] a motion for summary judgment." Thus, James argued that he was entitled to twenty-one days' notice under Rule of Civil Procedure 166a(c). The trial court was apparently not persuaded by this argument and signed an order on August 8 dismissing James's suit with prejudice.

## Standing

James contends in his first issue that Appellees lack standing because: (1) "the [Department] violated Section 102.004(a) of the Texas Family Code by placing C.S. with her maternal great aunt and uncle, who are not within the third degree of consanguinity"; and (2) their niece (the child's mother) voluntarily relinquished her parental rights.

The version of section 102.004(a) potentially applicable to this case confers standing on a grandparent to "file an original suit requesting managing conservatorship" under the circumstances provided by the statute. Act of May 29, 2005, 79th Leg., R.S., ch. 916, § 3, 2005 Tex. Gen. Laws 3148, 3149 (amended 2007) (current version at Tex. Fam.Code Ann. § 102.004(a) (Vernon Supp.2007)). The 2007 amendment extended this standing to "another relative of the child related within the third degree by consanguinity." Act of May 28, 2007, 80th Leg., R.S., ch. 1406, § 2, 2007 Tex. Gen. Laws 4814, 4815. This amendment applies "only to an original suit affecting

the parent-child relationship filed on or after the effective date of this Act," which was September 1, 2007.[4] *Id.*, ch. 1406, § 55, 2007 Tex. Gen. Laws at 4834.

■ Section 102.004 addresses only the standing of a grandparent or other relative to file an *original* suit.[5] Here, Appellees have not filed an original suit affecting the parent-child relationship. Instead, the Department instituted these proceedings under Title 5, Subtitle E of the Family Code, which authorizes State intervention in cases of abuse or neglect. Thus, Appellees were identified as relative caregivers under section 262.114 of the Family Code, and the child was placed in their care. *See* Tex. Fam.Code Ann. § 262.114 (Vernon Supp.2007).

Unlike the limitations of section 102.004, a relative caregiver under section 262.114 is not limited to a grandparent or other relative within the third degree of consanguinity and is defined by section 264.751. *Id.* § 262.114(a) (directing Department to identify potential relative caregivers "as defined by Section 264.751"). Section 264.751(2) defines a "relative" as "a person related to a child by consanguinity as determined under Section 573.022, Government Code." *Id.* § 264.751(2) (Vernon Supp.2007). Section 573.022 provides in pertinent part, "Two individuals are related to each other by consanguinity if: (1) one is a descendant of the other; or (2) they share a common ancestor." Tex.

Gov't Code Ann. § 573.022(a) (Vernon 2004).

Because Appellees have not filed an original suit affecting the parent-child relationship and because they were properly identified as relative caregivers by the Department and appointed as joint managing conservators in the termination proceedings instituted by the Department, the standing provisions of section 102.004 do not apply here.

■ Section 102.006 potentially governs the second aspect of James's standing argument. Subsection (a)(3) of that statute provides in essence that the relative of a parent whose parental rights have been terminated may not file "an original suit" for custody of the child if there is another living parent whose rights have not been terminated. Act of May 25, 2001, 77th Leg., R.S., ch. 821, § 2.08, 2001 Tex. Gen. Laws 1610, 1637 (amended 2007) (current version at Tex. Fam.Code Ann. § 102.006(a)(3) (Vernon Supp.2007)). However, subsection (b) provides an exception to this rule of standing for a person who "has a continuing right to possession of or access to the child under an existing court order." Tex. Fam.Code Ann. § 102.006(b) (Vernon Supp.2007).

James's complaint that Appellees lack "standing" under section 102.006 because the mother voluntarily relinquished her parental rights is without merit. As with section 102.004, section 102.006 does not apply because Appellees have not filed "an

---

4. Thus, even assuming section 102.004 applied to James's suit, the 2007 amendment would not apply because James filed his motion to modify nearly four months before this amendment took effect. *See* Act of May 28, 2007, 80th Leg., R.S., ch. 1406, § 55, 2007 Tex. Gen. Laws 4814, 4834.

5. This is also consistent with the traditional notion of "standing" as a legal principle which determines whether a *plaintiff* or *peti-*

*tioner* has a sufficient justiciable interest to file a lawsuit and obtain judicial relief. *See, e.g., Austin Nursing Ctr., Inc. v. Lovato,* 171 S.W.3d 845, 848 (Tex.2005) ("A plaintiff must have both standing and capacity *to bring a lawsuit.*") (emphasis added); *see also* Black's Law Dictionary 1442 (8th ed.2004) (defining "standing" as "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right").

original suit" affecting the parent-child relationship. Moreover, even if they had filed an original suit, they would have standing under subsection (b) because they have custody of the child "under an existing court order." *Id.*

Accordingly, we overrule James's first issue.

### Notice

■ James contends in his second issue that the court erred by dismissing his suit because he did not receive adequate notice of the hearing on Appellees' motion. In particular, James argues that he was entitled to: (1) twenty-one days' notice as provided by Rule of Civil Procedure 166a(c) because Appellees' dismissal motion is like a summary-judgment motion; or (2) at least six days' notice as provided by Rules of Civil Procedure 21 and 21a. *See* Tex.R. Civ. P. 21, 21a, 166a(c).

As James suggests, the Rules of Civil Procedure apply to modification proceedings under Chapter 156 of the Family Code. *See* Tex. Fam.Code Ann. § 156.004 (Vernon 2002).

#### *Rule 166a(c)*

James argues that Appellees' dismissal motion "is in essence a 'no-evidence' summary-judgment [sic] because it seeks to dismiss [his] case on the contention that the affidavits do not present adequate facts to proceed to a factual hearing." He cites *Kleven v. Texas Department of Criminal Justice* to support his position. 35 S.W.3d 112 (Tex.App.–Texarkana 2000, no pet.). Because Rule of Civil Procedure 166a(c) provides that a non-movant is entitled to at least twenty-one days' notice before a summary-judgment hearing, James contends that he too should have received twenty-one days' notice of the hearing on Appellees' dismissal motion. *See* Tex.R. Civ. P. 166a(c).

In *Kleven,* the Texarkana Court reviewed a trial court's dismissal of an inmate suit as frivolous under section 14.003 of the Civil Practice and Remedies Code. *Id.* at 113; *see* Tex. Civ. Prac. & Rem.Code Ann. § 14.003 (Vernon 2002). As with James's case, the trial court in *Kleven* granted TDCJ's motion to dismiss the suit without a hearing. *Kleven,* 35 S.W.3d at 113. In reviewing this decision, the court did characterize the motion to dismiss as "essentially a motion for summary judgment." *Id.* However, the court did not in any way attempt to apply the notice requirements of Rule 166a to a dismissal motion under section 14.003 of the Civil Practice and Remedies Code.

The Supreme Court has addressed a similar issue in the context of a plea to the jurisdiction. In *Texas Department of Parks & Wildlife v. Miranda,* the Court discussed the standard of review applicable to a plea to the jurisdiction and concluded that the applicable standard "generally mirrors that of a summary judgment under [Rule 166a(c)]." 133 S.W.3d 217, 225–28 (Tex.2004). However, the Court expressly rejected the dissent's position that a plaintiff should have twenty-one days notice to respond to a plea to the jurisdiction. *Id.* at 228–29; *see also id.* at 236 (Jefferson, J., dissenting) ("At a minimum, I would hold that if a summary judgment standard applies, the trial court must so advise the parties and employ Rule 166a procedures.").

Therefore, following *Miranda,* we hold that a party is not entitled to twenty-one days' notice to respond to a dismissal motion under section 156.102(c).

#### *Rule 21*

■ James also contends that he was entitled to at least six days' notice of the

hearing under Rules of Civil Procedure 21 and 21a.

Rule 21 provides in pertinent part:

An application to the court for an order and notice of any hearing thereon, not presented during a hearing or trial, shall be served upon all other parties not less than three days before the time specified for the hearing unless otherwise provided by these rules or shortened by the court.

Tex.R. Civ. P. 21.

Rule 21a provides in pertinent part:

Whenever a party has the right or is required to do some act within a prescribed period after the service of a notice or other paper upon him and the notice or paper is served upon by mail or by telephonic document transfer, three days shall be added to the prescribed period.

*Id.* 21a.

■ Reading these rules together, a party is ordinarily entitled to six days' notice of a hearing when he is served with notice of hearing via facsimile or mail. *See Buruato v. Mercy Hosp. of Laredo*, 2 S.W.3d 385, 387 (Tex.App.–San Antonio 1999, pet. denied). However, Rule 21 permits a trial court to shorten the length of notice. Tex.R. Civ. P. 21; *In re K.A.R.*, 171 S.W.3d 705, 713 (Tex.App.–Houston [14th Dist.] 2005, no pet.); *Buruato*, 2 S.W.3d at 387. We review a court's decision to do so under an abuse-of-discretion standard. *See K.A.R.*, 171 S.W.3d at 713; *Buruato*, 2 S.W.3d at 387.

Here, Appellees did not file their dismissal motion or the accompanying notice of hearing until August 6. They served James by facsimile on the same date. The hearing was conducted on the dismissal motion on August 8, over James's objection.

Although James had only two days' notice from the date of filing, Appellees also note that they informed James by facsimile dated July 30 that they would be filing their dismissal motion on August 6 and that it would be heard on August 22. Thus, James had additional notice of Appellees' intention to seek a dismissal of his suit.

Appellate courts have generally discouraged trial courts from shortening the applicable notice periods for hearings which result in a dismissal of a plaintiff's suit. *See, e.g., Kuykendall v. Spicer*, 643 S.W.2d 776, 778 (Tex.App.–San Antonio 1982, no writ). Here, however, James had additional notice that Appellees intended to seek dismissal. In addition, the trial court's decision was based solely on the facts stated in the supporting affidavits, and James has yet to identify any additional facts which he contends would change the outcome. Accordingly, we cannot say that the court abused its discretion by shortening the applicable notice period. *See K.A.R.*, 171 S.W.3d at 713; *Buruato*, 2 S.W.3d at 388.

Thus, we overrule James's second issue.

## Special Exceptions

James contends as part of his fourth issue that the court erred by dismissing his suit because Appellees did not specially except to the adequacy of his motion to modify.

■ "A special exception is the proper vehicle to challenge a pleading on the basis that 'though there is a legal rule which might be applicable, the petition omits one or more allegations essential to

bring plaintiff's claim within its scope.' " *Godley Indep. Sch. Dist. v. Woods,* 21 S.W.3d 656, 660 (Tex.App.–Waco 2000, pet. denied) (quoting *Fernandez v. City of El Paso,* 876 S.W.2d 370, 372 (Tex.App.–El Paso 1993, writ denied)); 2 ROY W. MC-DONALD & ELAINE A. GRAFTON CARLSON, TEXAS CIVIL PRACTICE § 9:25 (2d ed.2002); *see also* TEX.R. CIV. P. 91 (governing special exceptions). However, because of the unique provisions of section 156.102(c), we hold that the rule regarding special exceptions does not apply.

Section 156.102(c) provides:

> The court shall deny the relief sought and refuse to schedule a hearing for modification under this section unless the court determines, on the basis of the affidavit, that facts adequate to support an allegation listed in Subsection (b) are stated in the affidavit. If the court determines that the facts stated are adequate to support an allegation, the court shall set a time and place for the hearing.

TEX. FAM.CODE ANN. § 156.102(c) (Vernon Supp.2007). This statute permits a denial of relief (or dismissal) without any advance notice to the litigants, solely from the trial court's review of the pleadings. Thus, this statute is similar to sections 13.001 and 14.003 of the Civil Practice and Remedies Code which permit a trial court to dismiss an inmate suit "either before or after service of process" and without a hearing. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 13.001, 14.003 (Vernon 2002).

The Fourteenth Court has concluded that the rule regarding special exceptions does not apply to suits dismissed under section 13.001. "It is our determination that since an in forma pauperis action can be dismissed at any time, either before or after service of process, TEX. CIV. PRAC. & REM.CODE § 13.001(c), the trial court's dismissal power should take precedence over the rule regarding special exceptions." *Johnson v. Peterson,* 799 S.W.2d 345, 347 (Tex.App.–Houston [14th Dist.] 1990, no writ). We hold that the same rule applies to dismissals under section 156.102(c). Accordingly, we overrule James's fourth issue insofar as it complains that the court erred by dismissing his suit because Appellees did not specially except to the adequacy of his pleadings.

### Affidavits

James contends in his third issue that the court erred by dismissing his suit because his supporting affidavits contain more than a scintilla of evidence to satisfy the requirements of section 156.102. He argues that a dismissal motion under subsection (c) of this statute is in effect a no-evidence summary-judgment motion because it permits a denial of relief on the basis of the pleadings.

■ We agree that the effect of Appellees' dismissal motion is similar to that of a no-evidence summary-judgment motion. However, there are a number of dispositive pretrial pleadings which can be filed in a civil suit and accomplish a similar result. Thus, we do not agree that the filing of a motion challenging the adequacy of affidavits under subsection (c) necessarily invokes the procedural requirements attendant to a no-evidence summary-judgment motion.

■ Rather, subsection (c) requires a trial court to examine any affidavit a movant has tendered in support of the motion to modify and determine whether the affidavit states "facts adequate to support an allegation listed in Subsection (b)." *See*

TEX. FAM.CODE ANN. § 156.102(c). Because subsection (c) focuses on the adequacy of the movant's pleadings,[6] it is more akin to a plea to the jurisdiction than to a summary-judgment motion. Thus, we will employ the standard of review applicable when reviewing a ruling granting a plea to the jurisdiction which challenges the plaintiff's pleadings.

▆▆ "When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent." *Miranda*, 133 S.W.3d at 226 (citation omitted); *accord Johnson v. Johnson County*, 251 S.W.3d 107, 109 (Tex.App.–Waco 2008, pet. denied). We take as true all factual allegations favorable to the plaintiff. We indulge every reasonable inference and resolve any doubts in the plaintiff's favor. *See Miranda*, 133 S.W.3d at 228; *Johnson*, 251 S.W.3d at 109.

Applying this same standard under subsection (c), we construe the pleadings liberally in favor of the movant and take as true all factual allegations favorable to the movant. We look to the movant's intent to determine if the affidavit states facts that support an allegation listed in Subsection (b).

Because Appellees are not seeking or consenting to any modification, because they have not relinquished custody of C.S., and because James does not allege any danger to C.S.'s physical health, the only issue is whether the affidavits contain "supporting facts" to sustain an allegation that "the child's present environment may ... significantly impair the child's emotional development." *See* TEX. FAM.CODE ANN. § 156.102(b)(1) (Vernon Supp.2007).

We begin by considering the legislative purpose for section 156.102.

The philosophical underpinning of section 156.102 is clear: the Legislature intended to promote stability in the conservatorship of children of divorced parents. To that end, relitigation of custodial issues within a short period of time after the custody order is discouraged through the imposition of a heightened standard of verified pleading. Public policy disfavors disruption of custodial arrangements within the first year, except in cases in which the child's physical health or emotional development is imperiled.

*Burkhart v. Burkhart*, 960 S.W.2d 321, 323 (Tex.App.–Houston [1st Dist.] 1997, pet. denied).

▆▆ James alleges in his amended motion to modify that modification of the prior order is in the child's best interest because: (1) the prior order does not conform to the mediated settlement agreement; (2) he has been deprived of access to his child because of Appellees' "wrong-

---

**6.** Because the focus is on the pleadings, we disagree with those courts which have applied an abuse-of-discretion standard. *See, e.g., Burkhart v. Burkhart*, 960 S.W.2d 321, 323 (Tex.App.–Houston [1st Dist.] 1997, pet. denied). De novo review is appropriate in a case such as this because the trial court is in no better position that the appellate court to evaluate the written pleadings. *Cf. Tex. Dep't* *of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004) ("Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law reviewed *de novo*."); *Turner v. Zellers*, 232 S.W.3d 414, 418 (Tex.App.–Dallas 2007, no pet.) ("we examine pleadings de novo to determine whether they state a cognizable cause of action").

ful acts"; (3) Appellees have refused to give him documentation of medical expenses; (4) Appellees refused to revise visitation days so he could take a better paying job; and (5) Appellees made disparaging remarks about him in front of the child, "the contents of which statements potentially constitute emotional abuse of the child by promoting parental alienation." James supported his motion with affidavits signed by himself, and by the child's godfather and godmother.

■■■ The first four grounds stated do not constitute allegations that "the child's present environment may ... significantly impair the child's emotional development." See TEX. FAM.CODE ANN. § 156.102(b)(1); *Burkhart*, 960 S.W.2d at 323–24; *Graves v. Graves*, 916 S.W.2d 65, 69 (Tex.App.–Houston [1st Dist.] 1996, no writ). Thus, we limit our review to James's allegation that Appellees have made statements and engaged in conduct which "potentially constitute emotional abuse of the child by promoting parental alienation."

James supports this allegation in his affidavit by stating: (1) C.S. has at least twice called him by name and told him "you are not my daddy" and that she is not supposed to call him her father; (2) C.S. has referred to her great-uncle as her "daddy" and told James that "her 'daddy' was going to put [him] in jail"; (3) C.S. has told him that her last name is the same as Appellees'; and (4) Appellees "follow behind my daughter and me, about five feet away, throughout the visitation at Chuckie–Cheese's. I cannot sufficiently bond with my daughter with the constant interference, such that the actions of [Appellees] clearly are part of a pattern of parental alienation." The affidavits of C.S.'s godfather and godmother generally corroborate various aspects of these factual assertions.

Taking these allegations as true and viewing them in the light most favorable to James, they do indicate "a pattern of parental alienation." This is similar to one of the factual allegations presented in *Burkhart*. There, the mother, who had the exclusive right to determine the child's legal residence, moved to California. *See Burkhart*, 960 S.W.2d at 322. The father alleged in his supporting affidavit, "[my ex-wife] has since moved to California, in essence denying me my rightful visitation with my child, and I believe that it is important that I have significant contact with the child for his proper development." *Id.* at 323–24. However, the trial and appellate courts found this claim inadequate.

> Equally inadequate is his contention that the removal of the child to California deprives him of significant contact important to the child's proper development. The decree gave the mother the right to determine the domicile of the child. In view of the heightened standards for a modification hearing within one year of a custodial order, an affiant must state concrete facts that clearly demonstrate that extraordinary relief is appropriate. The father did not meet that standard.

*Id.* at 324.

The same result obtained in *Graves* where the movant alleged that the respondent's boyfriend had "denied me access to [my] child" and "threatened me with bodily harm." *See Graves*, 916 S.W.2d at 69.

By contrast, the movant in *Mobley v. Mobley* included with her affidavit the report of a clinical psychologist who explained how the respondent's anticipated move to the Republic of Panama could significantly impair the child's emotional

development. *See Mobley v. Mobley,* 684 S.W.2d 226, 229–30 (Tex.App.–Fort Worth 1985, writ dism'd).

Consistent with *Burkhart* and *Graves,* we hold as a matter of law that the factual allegations in James's supporting affidavits do not state "facts adequate to support an allegation" that "the child's present environment may ... significantly impair the child's emotional development." *See* Tex. Fam.Code Ann. § 156.102(b)(1), (c); *Burkhart,* 960 S.W.2d at 324; *Graves,* 916 S.W.2d at 69. Accordingly, we overrule James's third issue.

### Dismissal with Prejudice

James also contends in his fourth issue that the court erred by dismissing his suit "with prejudice."

 A dismissal with prejudice is an adjudication on the merits. *Ritchey v. Vasquez,* 986 S.W.2d 611, 612 (Tex.1999) (per curiam); *Hickman v. Adams,* 35 S.W.3d 120, 124 (Tex.App.–Houston [14 Dist.] 2000, no pet.). "Thus, orders dismissing cases with prejudice have full res judicata and collateral estoppel effect, barring subsequent relitigation of the same causes of action or issues between the same parties." *Hickman,* 35 S.W.3d at 124 (citing *Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 630–31 (Tex.1992)) (other citations omitted).

■ Again, drawing parallels to inmate litigation, Texas appellate courts have routinely held that the dismissal of an inmate suit for failure to comply with the requirements of Chapter 14 of the Civil Practice and Remedies Code should not be "with prejudice" because it is not a decision on the merits and because the pleading defi-

ciency can be remedied. *See, e.g., Decker v. Dunbar,* 200 S.W.3d 807, 812–13 (Tex. App.–Texarkana 2006, pet. denied); *Williams v. Tex. Dep't of Criminal Justice,* 176 S.W.3d 590, 594 (Tex.App.–Tyler 2005, pet. denied); *Thomas v. Knight,* 52 S.W.3d 292, 295–96 (Tex.App.–Corpus Christi 2001, pet. denied); *Hickman,* 35 S.W.3d at 124–25. The same rule should apply to a dismissal under section 156.102(c) of the Family Code.

Therefore, we sustain this aspect of James's fourth issue.

### Conclusion

We modify the judgment by deleting the phrase "with prejudice." *See Decker,* 200 S.W.3d at 813; *Williams,* 176 S.W.3d at 594–95; *Thomas,* 52 S.W.3d at 296; *Hickman,* 35 S.W.3d at 125. We affirm the judgment as modified.

Chief Justice GRAY dissenting in part with note.*

---

* ("Chief Justice Gray would affirm the trial court's judgment without modification. To the extent the court modifies the trial court's judgment before affirming it, he dissents. A separate opinion will not issue. He notes, however, that the Court's holding encourages needless repetition of this proceeding based only on these facts without the benefits of the

defenses of collateral estoppel and res judicata.'')